Citation Nr: 1438749 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 10-11 273 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Portland, Oregon


THE ISSUE

Entitlement to service connection for tinnitus.


REPRESENTATION

Veteran represented by: Oregon Department of Veterans' Affairs


WITNESSES AT HEARING ON APPEAL

Veteran & F.C.


ATTORNEY FOR THE BOARD

L. Edwards Andersen, Counsel


INTRODUCTION

The Veteran had active service from March 1966 to March 1968.

This matter comes before the Board of Veterans' Appeals (BVA or Board) from an April 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon.

The Veteran requested a hearing before the Board. The requested hearing was conducted in February 2012 by the undersigned. A transcript is associated with the claims file.

The Board notes that this appeal originally included entitlement to service connection for left ear hearing loss; however, that issue was granted in full in a June 2014 rating decision, and as such, is no longer on appeal.

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record. In addition to the VBMS claims file, there is a Virtual VA paperless file associated with the Veteran's case.


FINDING OF FACT

Tinnitus of the ear clearly and unmistakably existed prior to service and clearly and unmistakably was not aggravated in service.


CONCLUSION OF LAW

Service connection for tinnitus is not established. 38 U.S.C.A. §§ 1110, 1111, 1131 (West 2002); 38 C.F.R. §§ 3.303, 3.304 (2013).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a).

The notice requirements were met in this case by a pre-adjudication letter sent to the Veteran in January 2009. That letter advised the Veteran of the information necessary to substantiate his claim, and of his and VA's respective obligations for obtaining specified different types of evidence. See Quartuccio v. Principi, 16 Vet. App. 183 (2002), 38 C F R § 3 159(b). This letter also advised the Veteran how disability ratings and effective dates are assigned. See Dingess/Hartman v. Nicholson, 19 Vet App 473 (2006). 

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records and VA medical records are in the file. Virtual VA records have been reviewed, and include additional VA treatment records. The Veteran referenced possible post service hearing tests during his February 2012 Hearing; the AMC sent a letter to the Veteran in March 2013 requesting the Veteran provide information concerning the hearing tests. The Veteran did not reply. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. In December 2013, the Board remanded this claim to obtain an addendum medical opinion. An opinion was received in May 2014 which the Board finds is adequate to decide the claim. Therefore, there has been substantial compliance with the Board's remand directives. See Stegall v. West, 11 Vet. App. 268 (1998); see also Dyment v. West, 13 Vet. App. 141 (1999) (holding that another remand is not required under Stegall where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). 

With respect to the Board hearing, the Court recently held in Bryant v. Shinseki, 23 Vet. App. 488 (2010), that 38 C.F.R. 3.103(c)(2) requires that the RO official or VLJ who conducts a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the hearing, the VLJ noted the issues on appeal. The VLJ also noted the elements that were lacking to substantiate the claim. Furthermore, the testimony of the Veteran demonstrated that he had actual knowledge of the elements necessary to substantiate the claim. Moreover, as detailed below, the Veteran received adequate notification as to the elements necessary to substantiate his claim. Finally, the Veteran has not asserted that VA failed to comply with 38 C.F.R. 3.103(c)(2), nor has he identified any prejudice in the conduct of either hearing. As such, the Board finds that, consistent with Bryant, the duties set forth in 38 C.F.R. 3.103(c)(2) have been satisfied. Crucially, the development necessary to substantiate the claim was conducted. 

VA's duty to assist in the development of the claim is complete, and no further notice or assistance to the Veteran is required to fulfill the duty. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd Smith v. Principi, 281 F.3d 1384 (Fed Cir 2002), Dela
Cruz v Principi, 15 Vet. App. 143 (2001).

II. Entitlement to Service Connection for Tinnitus 

The Veteran seeks entitlement to service connection for tinnitus.

The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board's analysis below will focus specifically on what the evidence shows, or fails to show, on the claims. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant). 

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303. 

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). To do so, the Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the Appellant. See Masors v. Derwinski, 2 Vet. App. 181 (1992). 

A lay witness is competent to testify as to the occurrence of an in-service injury or incident where such issue is factual in nature. Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). In some cases, lay evidence will also be competent and credible on the issues of diagnosis and etiology. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). 

Specifically, lay evidence may be competent and sufficient to establish a diagnosis where (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d at 1377; see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). A layperson is competent to identify a medical condition where the condition may be diagnosed by its unique and readily identifiable features. Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). 

Additionally, where symptoms are capable of lay observation, a lay witness is competent to testify to a lack of symptoms prior to service, continuity of symptoms after in-service injury or disease, and receipt of medical treatment for such symptoms. Charles v. Principi, 16 Vet. App 370, 374 (2002). 

When considering whether lay evidence is competent, the Board must determine, on a case-by-case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011). However, although the Veteran is competent in certain situations to provide a diagnosis of a simple condition such as a headache, varicose veins, or tinnitus, the Veteran is generally not competent to provide evidence as to more complex medical questions, such as the etiology of psychiatric, respiratory, or orthopedic disorders. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). 

In determining whether the Veteran's disability is related to service, the Board will first address whether the presumption of soundness attaches in this instance and, if so, whether it has been rebutted by clear and unmistakable evidence. 

A Veteran is presumed in sound condition except for defects noted when examined and accepted for service. Clear and unmistakable evidence 1) that the disability existed prior to service and 2) was not aggravated by service, will rebut the presumption of soundness. 38 U.S.C.A. § 1111; Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004); VAOPGCPREC 3-2003.

A preexisting injury or disease will be considered to have been aggravated by active service where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306; Wagner, 370 F.3d at 1096. 

The Veteran's service treatment records were reviewed. On the Veteran's Report of Medical History from January 1966, he noted that he had ear, nose or throat trouble and explained that his left ear was hit by a rock when he was approximately 17 years old. His January 1966 induction examination indicated left ear hearing impairment, but tinnitus was not reported or noted at the time. Accordingly, the Veteran was not noted to have tinnitus upon his entry into service. 

There were no further complaints, treatment, or diagnoses of tinnitus problems during service. The March 1968 separation examination did not note any abnormalities relating to tinnitus. 

The Veteran was afforded a VA examination in March 2009. He reported constant tinnitus in the left ear only, with an onset occurring after he suffered a head injury, at approximately 15 years old. The Veteran was diagnosed with subjective left ear tinnitus, dating back to a head injury at age 15 years.

A VA medical opinion was obtained in March 2013. The examiner opined that there was clear evidence that the Veteran's tinnitus was a pre-existing condition, as the Veteran himself reported that he had constant tinnitus in the left ear since the age of 15 years old, following a head injury. 

A VA medical opinion was obtained in January 2014. The examiner opined that the Veteran's tinnitus was already constant and unilateral in nature (on the left only) at the time of his induction to the military, as reported by the Veteran.

Based on the totality of the evidence, the Board finds that the evidence clearly and unmistakably favors a conclusion that the Veteran had pre-existing tinnitus of the left ear at the time of his entry into active military service. 38 C.F.R. § 3.304(b). The Veteran himself has indicated that he entered into service with left ear tinnitus as a result of a head injury prior to service. 

Having found clear and unmistakable evidence of a pre-existing disability, the next inquiry is whether there is clear and unmistakable evidence that the disability was not aggravated during service. VAOPGCPREC 3-03. The government may show a lack of aggravation by establishing that there was no increase in disability during service or that any "increase in disability [was] due to the natural progress" of the pre-existing condition. If this burden is met, then the Veteran is not entitled to service-connected benefits. However, if the government fails to rebut the presumption of soundness under 38 U.S.C.A. § 1111, the Veteran's claim is one for service connection. 

The Board notes that the Veteran is a combat Veteran. The Board further finds that the Veteran is presumed to have incurred acoustic trauma during service as such injury is consistent with the circumstances, conditions, and hardships of his combat service. Although acoustic trauma is conceded, service records, however, do not indicate any additional complaints or symptoms of left ear tinnitus during service. Post-service records indicate that the Veteran reports he continues to suffer from left ear tinnitus.

In the March 2013 VA opinion, the examiner explained that tinnitus that occurs after noise exposure is typically brief in nature, although repeated noise exposure can lead to ear damage that results in permanent, constant tinnitus. The examiner also stated that tinnitus that is occasional in nature might worsen or become permanent after noise exposure if that noise exposure has caused damage to the ear and/or hearing loss occurs. The examiner explained that in this case, the Veteran's tinnitus was present before his military service and had been constant since he was 15 years old. The examiner noted that once tinnitus is present at a constant rate, it is usually permanent. The examiner then stated that tinnitus can vary in frequency and intensity over a lifetime, dependent on many factors, including stress, illness, certain foods and beverages, psychological issues, medications, etc., and that these variations are considered to be normal; however, once tinnitus has reached the point where it is constant, that is usually an indication that permanent damage has been done to the ear. The examiner then opined that the Veteran's tinnitus was less likely as not aggravated by military noise exposure. 

An addendum opinion was obtained in March 2014. The examiner maintained that it was her opinion, in concurrence with the previous examiner, that the Veteran's tinnitus was already constant, and unilateral in nature (on the left only) at the time of his induction to the military. The examiner stated, similar to the March 2013 VA examiner, that the natural course of tinnitus is variant amongst the general population, as well as within an individual. The examiner explained that tinnitus is fairly random, can change in intensity, pitch and duration, and some people experience sudden increases in intensity for no apparent reason, while others experience a total cessation of their tinnitus, with no apparent cause. The examiner noted that during his appeal, the Veteran did not report any onset of tinnitus in the right ear, which could be cause for worsening of his tinnitus. The examiner then stated that it could not be stated to any high degree of medical certainty that the Veteran's tinnitus was or was not aggravated by acoustic trauma during his military service as it would be a purely speculative opinion.

The Board finds that there clearly and unmistakably was no aggravation of the pre-existing left ear tinnitus during service. The examiner stated that it could not be stated to any high degree of medical certainty that the Veteran's tinnitus was or was not aggravated by acoustic trauma during his military service because it would be a purely speculative opinion. Significantly, however, the VA examiners have explained that the natural course of tinnitus is variant and there is no evidence of a report of onset of tinnitus in the right ear, which would suggest worsening of the tinnitus. Indeed, at the Board hearing, testimony from the Veteran clearly shows that he does not have a firm belief that his symptoms worsened in service. See, e.g., Transcript page 13 ("I never bothered about ringing in the ears. I mean, it never crossed my mind. I didn't even know what tinnitus was, you know at that age. But it's not something I worried about, you know."). Thus, there is a lack of lay evidence or medical evidence that shows a worsening of the Veteran's symptoms in service, and the natural course of tinnitus is variant. In light of the foregoing, the Board finds that it is "undebatable" and "reasonable minds could not differ" on the fact that there is simply no evidence of worsening of the tinnitus in service. For these reasons, the Board finds that the evidence as a whole rises to the level of clear and unmistakable evidence that there was no aggravation of the pre-existing left ear tinnitus during service. 

The only evidence of record supporting the Veteran's claim is his own general conclusory nexus opinion that his pre-existing left ear tinnitus was aggravated during service. In this regard, the Veteran is competent to give evidence about observable symptoms such as ringing in the ears. Layno v. Brown, 6 Vet. App. 465, 469 (1994); Jandreau, supra ("Sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer.") However, the Veteran is not competent, in this instance, to opine that his pre-existing left ear tinnitus was aggravated as a result of his time in service, as that is a complex medical question that requires medical expertise and training, including knowledge of the etiology and progression of disorder and correlation with past medical records and reported history. Although the Veteran is competent to report tinnitus symptoms, as a layperson he is not qualified to provide an opinion on whether such disorder was aggravated as a result of his time in service. The question of aggravation of the underlying condition would not be subject to lay observation, as contrasted with the situations contemplated by Jandreau and Barr v. Nicholson, 21 Vet. App. 303 (2007). Here, the Veteran's lay nexus opinion on aggravation is not competent evidence and cannot be considered as evidence favorable to the claim. 

In light of the above, the Board finds that the evidence of record clearly and unmistakably shows that the Veteran's tinnitus, which existed prior to service, was not chronically worsened during service. 

The Board observes that it is not necessary to address the issue of aggravation under the provisions of 38 U.S.C.A. § 1153 and 38 C.F.R. § 3.306(b). This statue and regulation do not apply to this case. The Board has determined under 38 U.S.C.A. § 1111 that the evidence clearly and unmistakably demonstrates that the Veteran's pre-existing tinnitus was not aggravated by active service. See VAOPGCPREC 3-2003. 

For the reasons discussed above, the Board finds that the Veteran's left ear tinnitus clearly and unmistakably pre-existed active service and clearly and unmistakably was not aggravated during active service. Accordingly, service connection for tinnitus is not warranted.

ORDER

Entitlement to service connection for tinnitus is denied.



____________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs